UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICARDO ANDERSON, | Case No. 3:16-cv-00545-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| ISIDRO BACA, *et al.*, | |
| Respondents. | |

## I.   SUMMARY

Petitioner Ricardo Anderson filed a petition for writ of habeas corpus ("Petition") (ECF No. 9) under 28 U.S.C. § 2254. This matter is before the Court for adjudication on the merits. For the reasons discussed below, the Court denies the Petition and a certificate of appealability.

## II.   BACKGROUND

Anderson's convictions are the result of events that occurred in Storey County, Nevada between July 2008 and January 2009. (ECF No. 19-19 at 2.) Anderson was originally charged in state justice court with two counts of embezzlement, one count of attempting to obtain money by false pretenses, and 37 counts of forgery. (ECF No. 19-1.) Later, in state district court, the criminal information charged Anderson with committing one count each of embezzlement, theft and attempting to obtain money by false pretenses. (ECF No. 19-19 at 2-3.) On September 17, 2010, Anderson pleaded guilty to the charges. (ECF No. 19-21 at 6-7; ECF No. 19-22.)

On November 19, 2010, the state district court sentenced Anderson to 48 to 120 months for the embezzlement count, 48 to 120 months for the theft count, and 24 to 60 months for the attempting to obtain money by false pretenses count. (ECF No. 19-26 at

14.) Anderson's sentences were ordered to run consecutively. (*Id.*) The state district court then suspended those sentences and placed Anderson "on probation not to exceed five years." (*Id.*) Anderson was also ordered to make restitution in the amount of $41,482.00. (*Id.* at 15.) The state district court imposed special conditions on Anderson's probation, for example, completion of drug court, employment in a full-time capacity, and notification to any prospective employers about his "convictions for these specific offenses." (*Id.* at 15-16.)

On June 27, 2011, the state filed a notice of probation violation. (ECF No. 20-2; *see also* ECF No. 20-5.) A hearing was held on July 15, 2011, in which Anderson denied several allegations made by the state regarding his violation of the special conditions of his probation. (ECF No. 20-3 at 4-5.) The state district court indicated that it would hold an evidentiary hearing to allow the state the opportunity to prove the allegations. (*Id.* at 16.) Following a hearing, the state district court revoked Anderson's probation and ordered him to serve his sentence. (ECF Nos. 20-14, 20-15.)

On June 11, 2012, Anderson filed a state habeas corpus petition. (ECF No. 20-20.) Thereafter, on June 17, 2013, Anderson filed a counseled, supplemental petition. (ECF No. 21-10.) A post-conviction evidentiary hearing was held on July 18, 2014. (ECF No. 22-4.) On September 11, 2014, the state district court denied Anderson's petition. (ECF No. 22-22.) Anderson appealed, and the Nevada Court of Appeals affirmed on May 20, 2015. (ECF No. 23-23.)

On August 4, 2015, Anderson filed a second state habeas corpus petition. (ECF No. 24.) The state district court denied the second petition on October 29, 2015, because it was untimely and included the same grounds for relief as Anderson's original state habeas petition. (ECF No. 24-7.) On January 4, 2016, Anderson filed a third state habeas corpus petition. (ECF No. 24-10.) The state district court dismissed two grounds in that petition and ordered a response from the state. (ECF No. 24-16.) On March 7, 2016, Anderson supplemented his third state petition. (ECF No. 24-18.) On July 21, 2016, the state district court denied the third petition. (ECF No. 24-30.) Anderson appealed, and

on October 12, 2017, the Nevada Court of Appeals affirmed. (ECF No. 30-5.) On October 24, 2017, Anderson filed a fourth state habeas corpus petition regarding the computation of his time served. (ECF No. 30-6.) The state district court dismissed the petition on January 16, 2018. (ECF No. 30-10.) On March 21, 2018, Anderson filed an "ex-parte motion writ of habeas corpus" in state district court. (ECF No. 30-11.) The state district court denied the motion on May 31, 2018. (ECF No. 30-14.)

Anderson's federal habeas corpus petition was filed on December 21, 2016. (ECF No. 9.) Respondents moved to dismiss the Petition on June 1, 2017. (ECF No. 18.) This Court denied the motion without prejudice. (ECF No. 26.) Respondents answered the Petition on June 27, 2018. (ECF No. 29.) Anderson replied on July 27, 2018. (ECF No. 31.)

On June 25, 2019, and December 2, 2019, Anderson moved for a status update. (ECF Nos. 33, 38.) On September 4, 2019, Anderson requested that this Court provide him "with the boilerplate motion for appointment of counsel." (ECF No. 35.) On December 16, 2019, Anderson, using a template, moved for the appointment of counsel.[1] (ECF No. 39.)

Anderson asserts four grounds for relief:

1.  His trial counsel failed to challenge the criminal information based on a double jeopardy violation and improperly advised him to waive his right to a preliminary hearing even though he had not received all discovery.
2.  He is innocent of embezzlement because he was never entrusted with the property prior to its conversion.
3.  He is innocent of attempting to obtain money by false pretenses because his conduct only constituted a misdemeanor under Nevada law.
4.  The state district court erred in revoking his probation for failing to complete drug court because his positive test results for cocaine were below the legal limit.

---

[1]This Court previously denied Anderson's first motion for appointment of counsel finding that, after a review of the Petition, the appointment of counsel was not warranted. (ECF No. 8 at 1.)

(ECF No. 9 at 3-9.)  The Court will address each ground in turn.

## III.  LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

///

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV. DISCUSSION

### A. Ground One

In Ground One, Anderson alleges that his federal constitutional rights were violated when his trial counsel failed to challenge the criminal information based on a double jeopardy violation and improperly advised him to waive his right to a preliminary hearing. (ECF No. 9 at 3.) Regarding the alleged double jeopardy violation, Anderson elaborates that the crimes of attempting to obtain money by false pretenses and theft are encompassed in the crime of embezzlement such that his convictions for these three crimes violate double jeopardy. (*Id.*)

It appears that this ground was raised in Anderson's appeal of the state district court's denial of his third state habeas petition. (ECF No. 24-36 at 40-43.) However, the Nevada Court of Appeals affirmed the denial of Anderson's third state habeas petition after determining that it was untimely and successive and, as such, was procedurally barred. (ECF No. 30-5 at 2-3 (citing NRS §§ 34.726(1), 34.810(2).) The Nevada Court of Appeals also determined that Anderson failed to demonstrate good cause or actual innocence in order to overcome these procedural issues. (*Id.* at 3-4.)

If Respondents had raised a procedural default defense before this Court for Ground One, Ground One would potentially have been subject to dismissal.

5

Respondents, however, have not raised such a defense,[2] and the Court sees no reason to exercise its discretion to *sua sponte* interpose a procedural default defense at this time. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) ("Generally, the state must assert the procedural default as a defense to the petition before the district court; otherwise the defense is waived. However, the district court retains discretion to consider the issue *sua sponte* if the circumstances warrant."). Raising the procedural default issue at this time—after the petition has been fully briefed—would not result in comity, federalism or judicial efficiency, as it would only lead to further briefing and delay. *See Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998) (explaining that "a habeas court has discretion to raise procedural default sua sponte to further the interests of comity, federalism, and judicial efficiency"). Furthermore, the Supreme Court has explained that "if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the [parties and the courts] will all be well served even if the State fails to raise [an appropriate] defense, the district court denies the habeas petition." *Granberry v. Greer*, 481 U.S. 129, 134 (1987) ("The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim."); *see also Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995) ("[B]ecause [Petitioner's] claim fails on the merits, the interests of comity and judicial efficiency are better served by addressing the claim on the merits."). As will be discussed, Ground One fails on the merits. Thus, for the aforementioned reasons, this Court declines to exercise its discretion to *sua sponte* interpose a procedural default defense.

///

---

[2]This may have been because the Nevada Court of Appeals' ruling on Anderson's appeal of his third state habeas petition was issued after Respondents filed their motion to dismiss in this case. (*Compare* ECF No. 30-5 at 2 (showing that the Nevada Court of Appeals' order was filed on October 12, 2017), *with* ECF No. 18 at 1 (showing that Respondents' motion to dismiss was filed on June 1, 2017).)

Ground One involves allegations that Anderson's trial counsel was ineffective. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, as is the case here, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

This Court will first address Anderson's contention that his trial counsel failed to challenge the criminal information based on a double jeopardy violation. First, it must be determined whether a double jeopardy violation occurred. The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. U.S. CONST. amend. V. The Double Jeopardy Clause provides three related protections: (1) it prohibits a second prosecution for the same offense after acquittal; (2) it prohibits a second prosecution for the same offense after conviction; and (3) it prohibits multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 343 (1975).

"[T]he final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) And "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are multiple is essentially one of legislative intent." *Id.* (internal quotation marks omitted). Thus, "if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Id.* at n.8.

The "same-elements" test established in *Blockburger v. United States*, 284 U.S. 299 (1932) is used to determine whether multiple prosecutions or multiple punishments involve the same offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993). The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.*; *see also Ball v. United States*, 470 U.S. 856, 861 (1985) ("The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes."). "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not.'" *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003). "'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). The "same act or transaction" can "constitute[ ] a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304.

Importantly, Anderson's convictions for embezzlement, theft, and attempting to obtain money by false pretenses were not based on the same offense, same act or same transaction. Indeed, the embezzlement conviction was due to Anderson altering payroll documents in the amount of approximately $11,000.00, the theft conviction was for

8

forging bank checks in the amount of $30,398.98, and the attempting to obtain money by false pretenses conviction was due to his false statement on his unemployment benefit application. (ECF No. 19-19 at 3-4.) Because the Double Jeopardy Clause is only implicated when there is a second prosecution for the *same offense* after acquittal, a second prosecution for the *same offense* after conviction, or multiple punishments for the *same offense*, *Wilson*, 420 U.S. at 343, there is no violation here.

Further, even if Anderson's convictions were based on the same offense, embezzlement, theft, and attempting to obtain money by false pretenses do not violate the *Blockburger* "same-elements" test. *See* 284 U.S. at 304. Nevada's embezzlement statute, NRS § 205.300(1), provides that:

> Any bailee of any money, goods or property, who coverts it to his own use, with the intent to steal it or to defraud the owner or owners thereof and any agent, manager or clerk of any person, corporation, association or partnership, or any person with whom any money, property or effects have been deposited or entrusted, who uses or appropriates the money, property or effects or any part thereof in any manner or for any other purpose than that for which they were deposited or entrusted, is guilty of embezzlement.

A "bailee" is defined as "all persons who are, either as agent, collector or servant, empowered, authorized or entrusted to carry, collect or receive any money, goods or property of another." NRS § 205.300(4). Nevada's obtaining money by false pretenses statutes, NRS § 205.380(1)(a), provides that "[a] person who knowingly and designedly by any false pretenses obtains from any other person . . . money . . . with the intent to cheat or default the other person, is a cheat." And the portion of Nevada's theft statute that Anderson was convicted under, NRS § 205.0832(1)(b), provides that:

> a person commits theft if, without lawful authority, he knowingly: . . . [c]onverts, makes an unauthorized transfer of an interest in, or without authorization controls any property of another person, or uses the services or property of another person entrusted to him or her or placed in his or her possession for a limited, authorized period of determined or prescribed duration or for a limited use.

Each of these three offenses "contains[ ] an element not contained in the other." *Dixon*, 509 U.S. at 696. Obtaining money by false pretenses requires that the defendant acquire property by false pretenses. NRS § 205.380(1)(a). Embezzlement and theft do not contain this requirement. *See* NRS §§ 205.300, 205.0832. Embezzlement requires that the defendant had lawful possession of the property prior to its conversion. NRS § 205.300. Obtaining money by false pretenses and theft do not contain this requirement. *See* NRS §§ 205.380(1)(a), 205.0832(1)(b). And theft requires conversion without lawful authorization. NRS § 205.0832(1)(b). Embezzlement and obtaining money by false pretenses do not contain this requirement. *See* NRS §§ 205.300(1), 205.380(1)(a).

Accordingly, there was no double jeopardy violation. Anderson's trial counsel was therefore not deficient in not challenging the criminal information on this ground. *Strickland*, 466 U.S. at 688.

Turning to the waiver of the preliminary hearing argument, Anderson claims that his trial counsel erred in advising him to waive his right to a preliminary hearing because he had not received all the discovery in his case at that time. (ECF No. 9 at 3.) On August 10, 2010, the state sent Anderson's trial counsel the discovery from his case. (ECF No. 24-6 at 48.) Later, on August 16, 2010, the state sent Anderson's trial counsel additional discovery. (ECF No. 24-24 at 6.) Because Anderson's trial counsel did not file the preliminary hearing waiver until August 31, 2010 (*see* ECF No. 19-15 at 2), Anderson's allegation that his trial counsel waived his right to a preliminary hearing prior to receiving discovery is meritless. In fact, Anderson's trial counsel testified at the post-conviction evidentiary hearing that while Anderson's preliminary hearing was continued, he "received a fair stack of discovery and [he] believe[d] complete discovery in regards to the investigation in the matter." (ECF No. 22-4 at 22, 26, 49.) And Anderson later testified at the post-conviction evidentiary hearing that he simply "didn't see the majority of what [his trial counsel was] talking about" regarding discovery until a later date. (ECF No. 22-4 at 66, 77.)

///

Anderson's trial counsel also explained in the waiver of the preliminary hearing filing that Anderson was originally charged with two counts of embezzlement, one count of attempting to obtain money by false pretenses, and 37 counts of forgery. (ECF No. 19-15 at 2.) However, a plea agreement had been made, and the state would be filing a criminal information in state district court charging Anderson with only one count of embezzlement, one count of theft, and one count of obtaining money by false pretenses. (*Id.*) Anderson's trial counsel elaborated at the post-conviction evidentiary hearing that "there was certainly evidence to support 40 counts" and Anderson would have "probably" been convicted of a "pretty substantial number of those 40 counts" if "witnesses and evidence could be produced that lined up with the discovery." (ECF No. 22-4 at 50-51.) Accordingly, in addition to having received the discovery in Anderson's case before filing the waiver of the preliminary hearing, it appears that Anderson's trial counsel was able to secure a substantial benefit to Anderson in taking the plea deal and waiving his right to a preliminary hearing (*see id.* at 51), so it cannot be determined that Anderson's trial counsel was deficient. *Strickland*, 466 U.S. at 688.

Anderson is denied federal habeas relief for Ground One.

**B.    Ground Two**

In Ground Two, Anderson argues that he is innocent of embezzlement because he was never entrusted with the converted property prior to its conversion. (ECF No. 9 at 5.) Anderson elaborates that he was not the bailee of his employer's accounts, as his employer farmed out the possessing of company payroll.[3] (*Id.*) In Anderson's appeal of the denial of his third state habeas petition in which he argued that he was actual innocent in order to overcome procedural issues, the Nevada Court of Appeals held:

> To demonstrate a fundamental miscarriage of justice, a petitioner must demonstrate he is actually innocent such that "it is more likely than not that

---

[3]Respondents' main rebuttal argument is that Anderson cannot argue that he is actually innocent of his crimes if he plead guilty. (ECF No. 29 at 12.) However, in this Court's previous order, it found that the discussion in *Class v. United States*, 138 S. Ct. 798 (2018) confirms that a claim of actual innocence, if otherwise cognizable, is not precluded by a plea. (ECF No. 26 at 8.) This Court declines to revisit this ruling.

no reasonable juror would have convicted him in light of . . . new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). And he must demonstrate he is factually, not merely legally, innocent of all charges brought, including those the State has foregone in exchange for a guilty plea. *See Bousley v. United States*, 523 U.S. 614, 624 (1998). Anderson has not alleged he is actually innocent of the 37 counts of forgery the State dismissed in exchange for his guilty plea. He has thus failed to demonstrate the failure to consider his claims on the merits resulted in a fundamental miscarriage of justice.

(ECF No. 30-5.)

Respondents argued in their motion to dismiss that actual innocence is not cognizable as a freestanding claim. (ECF No. 18 at 4.) This Court deferred resolution of this legal issue until this time. (ECF No. 26 at 6.) The Supreme Court has not yet recognized a freestanding "actual innocence" claim as a constitutional claim. *See, e.g., McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Gimenez v. Ochoa*, 821 F.3d 1136, 1143 (9th Cir. 2016) ("The Supreme Court has never recognized 'actual innocence' as a constitutional error that would provide grounds for relief without an independent constitutional violation."). However, if a freestanding actual innocence claim is cognizable, in order to be successful on such a claim, a petitioner would be required to show:

> a truly persuasive demonstration of "actual innocence" . . . [and] because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

*Herrera v. Collins*, 506 U.S. 390, 417 (1993). This "contemplates a stronger showing than insufficiency of the evidence to convict" or "doubt about his guilt." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). Indeed, under these standards, a petitioner must "affirmatively prove that he is probably innocent." *Id.* Additionally, "*Herrera* requires more convincing proof of innocence than" the actual-innocence standard applied in *Schlup v.*

*Delo*, 513 U.S. 298 (1995), for overcoming a procedural bar. *House v. Bell*, 547 U.S. 518, 555 (2006).

Anderson's embezzlement charge stemmed from him "alter[ing his employer's] payroll documents and submit[ting] them to unlawfully obtain the benefit of an additional Five Hundred Dollars ($500.00) per week" for approximately seven months in his role as bookkeeper or accountant. (ECF No. 19-19 at 2-3.) The evidence that Anderson argues establishes his innocence is an investigative report by Sergeant Martin Roberto of the State of Nevada Department of Public Safety, Investigation Division. (ECF No. 24-36 at 21.) The report, dated September 1, 2009, discusses an interview Sergeant Roberto had with Konrad Eriksen, the president of Dynamic Isolation Systems, Anderson's former employer, on August 25, 2009. (*Id.*) Eriksen explained to Sergeant Roberto that "Anderson was hired April 07, 2008, as the company accountant" and "was a sole charge bookkeeper with responsibilities for accounts payable, accounts receivable, payroll, petit cash, reconciling the bank statements and preparation of all checks excluding the actual signing of the checks." (*Id.* at 22.) On January 13, 2009, Eriksen decided to terminate Anderson and, after examining Anderson's earnings, discovered that "Anderson had changed his gross wages from $1,009.62 weekly [to] $1,509.62 a week." (*Id.*) Eriksen explained that "[t]he extra $500.00 all was paid to either Federal income tax or FICA. In this way Anderson would receive a large income tax return at the end of the year." (*Id.* at 23.) Eriksen noted that "[t]he company's payroll is processed by a company out of San Francisco called ADP (Automatic Data Processing, Inc.)." (*Id.*) "Anderson reported the payroll hours and overtime hours to ADP who then processed the payroll, took out the applicable taxes and issued the applicable checks/direct deposits." (*Id.*) Based on this report and interview, Anderson argues that Automatic Data Processing, Inc. was the bailee of the money, not him, as he was never entrusted with it. This argument lacks merit.

NRS § 205.300(1) provides that:

///

Any bailee of any money, goods or property, who converts it to his own use, with the intent to steal it or to defraud the owner or owners thereof and any agent, manager or clerk of any person, corporation, association or partnership, or any person with whom any money, property or effects have been deposited or entrusted, who uses or appropriates the money, property or effects or any part thereof in any manner or for any other purpose than that for which they were deposited or entrusted, is guilty of embezzlement.

Moreover, the Nevada Supreme Court has held that "[i]n order to be guilty of embezzlement, a defendant must have been entrusted with lawful possession of the property prior to its conversion." *Batin v. State*, 38 P.3d 880, 883 (Nev. 2002); *see also* NRS § 205.300(4) (providing that a "bailee" is defined as "all persons who are, either as agent, collector or servant, empowered, authorized or entrusted to carry, collect or receive any money, goods or property of another"). However, lawful possession may be actual or constructive, meaning "'both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *Batin*, 38 P.3d at 883.

First, although Anderson asserts that he is factually innocent, it appears that his assertion is actually based on legal insufficiency: the role that Automatic Data Processing, Inc. played in the processing of payroll meant that Anderson failed to meet the legal definition of a bailee. This alone makes Anderson's actual innocence claim fails. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not merely legal insufficiency.") Further, Sergeant Roberto's interview of Eriksen fails to demonstrate that Anderson was factually innocent of embezzlement. Anderson "was a sole charge bookkeeper with responsibilities for . . . payroll." (ECF No. 24-36 at 22.) And although Dynamic Isolation Systems' payroll was processed by Automatic Data Processing, Inc., Anderson was the one who "reported the payroll hours and overtime hours to ADP." (*Id.* at 23.) Therefore, even though Automatic Data Processing, Inc. issued the payroll checks and removed the applicable taxes, those acts were done at the direction of Anderson who provided Automatic Data Processing, Inc. with the information it needed to perform those duties. This evidence demonstrates that

Anderson was "entrusted with the lawful possession of" Dynamic Isolation Systems' payroll monies and that he had possession of those monies when the unlawful addition of $500.00 to his paycheck took place. *Batin*, 38 P.3d at 883; NRS § 205.300(4). Although Automatic Data Processing, Inc. processed the payroll checks, not Anderson, Anderson still had control over the payroll monies, as there is no evidence that Automatic Data Processing, Inc. had the ability to alter the payroll amounts submitted by Anderson. Accordingly, even if a freestanding actual-innocence claim is available in noncapital habeas proceedings, Anderson has not presented "a truly persuasive demonstration of 'actual innocence,'" *Herrera*, 506 U.S. at 417, such that the Nevada Court of Appeals' related conclusion in this regard was reasonable.

Anderson is denied federal habeas relief for Ground Two.[4]

## C.  Ground Three

In Ground Three, Anderson argues that he is innocent of attempting to obtain money by false pretenses because his conduct in applying for unemployment benefits two days prematurely only constituted a misdemeanor under Nevada law, not a felony.[5] (ECF No. 9 at 7.). As was the case with Ground Two, this Court deferred resolution of Respondents' argument that actual innocence is not cognizable as a freestanding claim until it considered the merits of this ground. (*See* ECF No. 18 at 4; ECF No. 26 at 6.)

Anderson's attempt to obtain money by false pretenses charge stemmed from him "falsely claiming to have been 'laid off' from his employment, when he in fact on the date

---

[4]Anderson referred to the ineffective assistance of his trial counsel in this ground of his Petition, but he failed to give specific allegations of what counsel did or failed to do. (*See* ECF No. 9 at 5.) However, in Anderson's reply, he appears to allege that his trial counsel was ineffective for recommending that he plead guilty to embezzlement in light of Sergeant Roberto's investigative report. (ECF No. 31 at 15-16.) To the extent that Anderson makes a cogent and cognizable ineffective assistance of counsel claim, such an argument lacks merit. Because Sergeant Roberto's investigative report failed to demonstrate that Anderson was innocent, Anderson's trial counsel was not deficient in advising Anderson to proceed with the guilty plea agreement. *Strickland*, 466 U.S. at 688.

[5]As was the case with Ground Two, Respondents argue that Anderson cannot argue that he is innocent of his crimes if he plead guilty. (ECF No. 29 at 16.) Again, this Court declines to revisit its previous ruling that a claim of actual innocence, if otherwise cognizable, is not precluded by a plea. (ECF No. 26 at 8.)

of [his unemployment] application was employed." (ECF No. 19-19 at 3.) On October 20, 2008, the president of Dynamic Isolation Systems, Konrad Ericksen, sent Anderson a letter explaining that it was his "intention for [Anderson] to transition out of the organization commencing in January 2009," but "[s]hould the circumstances warrant[, he] would be happy to review [Anderson's] continued employment at that time." (ECF No. 24-36 at 36.) During his interview with Sergeant Roberto, Eriksen indicated that he decided to terminate Anderson on January 13, 2009, and the next day, January 14, 2009, he confronted Anderson. (*Id.* at 22-23.) The same day as this confrontation, Eriksen explained that "an unemployment claim arrived in the mail showing Anderson had applied for unemployment the previous week while Anderson was still employed by Dynamic Isolation Systems Inc." (*Id.* at 24.) Eriksen then spoke to his company's receptionist, "who stated Anderson had previously instructed her not to open any unemployment claims that came in the mail." (*Id.*) The unemployment notice received by Eriksen from the Department of Employment, Training and Rehabilitation, Employment Security Division indicated that Anderson's alleged separation date from Dynamic Isolation Systems, Inc. was January 9, 2009. (*Id.* at 37.) However, consistent with his interview, Eriksen responded to the notice, indicating that Anderson's separation date was not until January 14, 2009. (*Id.*)

Anderson argues that he should have been charged pursuant to NRS § 612.715, not NRS § 205.380(a), for these actions. (*See* ECF No. 19-19 at 3 (citations in the criminal information to NRS § 193.330—Nevada's punishment for attempted crimes statute—and NRS § 205.380(a)—Nevada's statute for an attempt to obtain money by false pretenses).) NRS § 612.715, which is found within a chapter devoted to unemployment compensation, provides that "whoever makes a false statement or representation knowing it to be false, or knowingly fails to disclose a material fact, to obtain or increase any benefit or other payment under this chapter, either for himself or herself or for any other person, is guilty of a misdemeanor." Contrarily, at the time of Anderson's conviction, NRS § 205.380(1)(a), which is found within a chapter devoted to crimes against property, provided that "[a]

16

person who knowingly and designedly by any false pretenses obtains from any other person . . . money . . . with the intent to cheat or default the other person, is a cheat" and shall be punished for a category B felony "[i]f the value of the thing or labor fraudulently obtained was $250 or more." Although it appears that the state could have chosen to charge Anderson pursuant to NRS § 612.715 instead of NRS § 205.380(1)(a), that does not mean that he is innocent of charges brought pursuant to NRS § 205.380(1)(a). Indeed, the fact that Anderson knowingly filed an inaccurate unemployment application with the intent to receive undeserved monies supports a finding that Anderson was guilty of attempting to obtain money by false pretenses in violation of NRS § 205.380(1)(a). Accordingly, even if a freestanding actual-innocence claim is available in noncapital habeas proceedings, Anderson has not presented "a truly persuasive demonstration of 'actual innocence,'" *Herrera*, 506 U.S. at 417, such that the Nevada Court of Appeals' related conclusion discussed in Ground Two was reasonable.

Anderson is denied federal habeas relief for Ground Three.[6]

### D. Ground Four

In Ground Four, Anderson alleges that his federal constitutional rights were violated when the state district court revoked his probation for failing to complete drug court. (ECF No. 9 at 9.) Anderson elaborates that the basis of his removal from drug court was incorrect because his positive drug test results were below the legal limit. (*Id.*) Anderson included this allegation in his appeal of the denial of his original state habeas petition. (ECF No. 23-7 at 20-22.) The Nevada Court of Appeals did not address this

---

[6]Similar to Ground Two, Anderson referred to the ineffective assistance of his trial counsel in this ground of his Petition, but he failed to give specific allegations of what counsel did or failed to do. (*See* ECF No. 9 at 7.) However, in Anderson's reply, he appears to allege that his trial counsel was ineffective for recommending that he plead guilty to attempting to obtain money by false pretenses when Anderson was factually and legally innocent of that charge. (ECF No. 31 at 19-20.) To the extent that Anderson makes a cogent and cognizable ineffective assistance of counsel claim, such an argument lacks merit. Because Anderson has failed to demonstrate that his is innocent of the charge of attempting to obtain money by false pretenses, Anderson's trial counsel was not deficient in advising Anderson to proceed with the guilty plea agreement in this regard. *Strickland*, 466 U.S. at 688.

allegation in its order affirming the denial of Anderson's original state habeas petition. (*See* ECF No. 23-23 at 2-8.) As this ground was apparently denied by the Nevada Court of Appeals without analysis, the question here is whether Anderson has shown that there was no reasonable basis for the Nevada Court of Appeals' ruling. *Harrington*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985). Indeed, "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("When the officer's view of the probationer's or parolee's conduct differs in [a] fundamental way from the latter's own view, due process requires that the difference be resolved before revocation becomes final."). In addition to these hearings, a probationer is entitled to the following:

> written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.

*Black*, 471 U.S. at 612. A "decision to revoke probation" has "two district components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Id.* at 611.

A violation report was prepared by the Nevada Department of Public Safety, Division of Parole and Probation regarding Anderson on May 27, 2011. (ECF No. 20-5 at 2.) The report indicated the following violations: Anderson failed to notify his employer of his offenses verbally and in writing; "Anderson was removed from the Washoe County Drug Court,"; and Anderson failed to pay restitution. (*Id.*) On June 27, 2011, the state

filed a notice of probation violation. (ECF No. 20-2.) A hearing was held on July 15, 2011, in which Anderson denied several of the violations. (ECF No. 20-3 at 4-5.) The state district court indicated that it would hold a later hearing to allow the state the opportunity to prove the allegations. (*Id.* at 16.)

Before the hearing, Anderson's trial counsel responded to the alleged probation violations. (ECF No. 20-11.) Regarding Anderson's removal from drug court, his trial counsel explained that:

> Each individual test result shows that the cut off level for reporting is 20 ng/ml. This means that the lab's standard protocol, usually based on Federal guidelines from the Department of Transportation, demands that tests below the cut off are not reported as positive. However, Redwood Labs has, at the request of the Washoe Adult Drug Court, agreed to report any detectable amount of controlled substance. None of Mr. Anderson's tests exceeded the 20 ng/ml level. In fact, on average, the tests were 10 ng/ml, half the standard cutoff.

(*Id.* at 3.) Anderson's trial counsel included the following exhibits with his response: emails sent from Anderson to his probation officer keeping him informed of his clients; letters from his clients acknowledging that Anderson had informed them about his offenses; an employment application in which he disclosed his offenses; and his toxicology reports. (*Id.* at 6-34.)

At the hearing held on November 18, 2011, Anderson's trial counsel again argued that Anderson's illegal substance test levels were below the cut-off level. (ECF No. 20-14 at 7-9; *see also* ECF No. 22-4 at 38-43 (testimony of Anderson's trial counsel at the post-conviction evidentiary hearing about reporting cut-off levels).) At the end of the hearing, the state district court revoked Anderson's probation and ordered him to serve his sentence. (ECF No. 20-14 at 13.) The state district court explained that "[i]t's important . . . that you haven't paid any restitution" and that it would not "second guess, or . . . question what the Drug Court Judges have done in this case" in removing Anderson from the program. (*Id.* at 12.) The state district court later entered a written order ordering that, "[b]ased upon the evidence presented to the Court concerning the

reported violation, the Court finds that the Defendant has violated the terms and conditions of his probation and the probation heretofore afforded the Defendant is revoked." (ECF No. 20-15 at 3-4.)

Anderson was not deprived of the due process rights afforded to a probationer facing revocation of his parole. *See Black*, 471 U.S. at 610-11; *Gagnon*, 411 U.S. at 782. Indeed, Anderson received notice of his alleged violations, copies of the toxicology reports, a preliminary hearing and a second revocation hearing, and statements by the state district court regarding its reasoning for revoking Anderson's probation. (*See* ECF Nos. 20-2, 20-3, 20-14, 20-15.) Rather, Anderson's argument is that his illegal substance test levels were too low to revoke his probation. Anderson misses the mark. Anderson's probation agreement provided that he "shall not use . . . any illegal drugs" and "successfully complete the Western Regional Drug Court Program." (ECF No 19-28 at 2-4.) "Anderson was removed from the Washoe County Drug Court" (ECF No. 20-5 at 2), so regardless of his levels, he failed to meet the condition of his probation requiring completion of drug court. *See also* NRS § 176A.420 ("Upon the granting of probation to a person convicted of a felony or gross misdemeanor, the court may, when the circumstances warrant, require as a condition of probation that the probationer submit to periodic tests to determine whether the probationer is using any controlled substance. *Any* such use or any failure or refusal to submit to a test is a ground for revocation of probation" (emphasis added).) Accordingly, the state district court found that Anderson violated this condition of his probation and that this violation, along with his failure to pay any restitution, warranted revocation of his probation. Thus, because it cannot be concluded that the state district court violated Anderson's due process rights by revoking his parole, *Black*, 471 U.S. at 610, Anderson has failed to show that there was no reasonable basis for the Nevada Court of Appeals to deny relief. *Harrington*, 562 U.S. at 98.

Anderson is denied federal habeas relief for Ground Four.

///

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Anderson. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Applying these standards, the Court finds that a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 9) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the motions for a status update (ECF Nos. 33, 38) are denied as moot.

It is further ordered that Anderson's motion for the appointment of counsel (ECF No. 39) is denied as this Court declines to alter its previous order denying Anderson the appointment of counsel.

///

///

///

It is further ordered that Anderson's request that this Court provide him "with the boilerplate motion for appointment of counsel" (ECF No. 35) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 10th day of February 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE